1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

CESAR PONCE,                          )
                                      )
11              Petitioner,           )          CASE NO. C06-152-RSM-MJB
                                      )
12        v.                          )
                                      )
13                                    )
ALICE PAYNE,                          )          REPORT AND RECOMMENDATION
14                                    )
                Respondent.           )
15 _____)
16

<u>INTRODUCTION AND SUMMARY CONCLUSION</u>

17
        Petitioner is a state prisoner who is currently confined at the McNeil Island Corrections
18
Center in Steilacoom, Washington.  Petitioner has filed a petition for writ of habeas corpus under
19
28 U.S.C. § 2254 challenging his 2001 King County Superior Court judgment and sentence.
20
Respondent has filed an answer to the petition together with relevant portions of the state court
21
record.  Petitioner has filed a reply to respondent's answer.  The briefing is complete and this
22
matter is now ripe for review.  This Court, having carefully reviewed the petition, the briefs of the
23
parties, and the state court record, concludes that petitioner's federal habeas petition should be
24
denied and this action should be dismissed with prejudice.
25
26

REPORT AND RECOMMENDATION
PAGE - 1

## FACTUAL/PROCEDURAL BACKGROUND

The Washington Court of Appeals summarized the facts of petitioner's case as follows:

Rida Ponce was married to Cesar Ponce.  They separated shortly after their son was born in September 1998, but continued to see each other romantically until July 2000, when Rida began dating an ex-boyfriend, Rick "Rico" Morales.  When Ponce saw Rida and Morales together at the Seafair Torchlight parade, he hit her on the head.  Rida met Ponce for lunch a few weeks later and he told her he wanted their relationship to continue.  Rida told him that she did not want a romantic relationship.

On August 23, Rida left her mother's apartment at 8:30 a.m. to walk to her car.  Ponce grabbed her, forced her into her car at knifepoint, sat directly behind her, and told her to drive to his home.  Rida asked why, and Ponce said they were going to get handcuffs to "set Rico up."  Report of Proceedings (RP) (Jan. 29, 2001) at 601.  When they arrived at Ponce's house, which he shared with several roommates, he forced Rida to walk upstairs to his bedroom.  Once inside his bedroom, he pushed a dresser in front of the door and directed Rida to call her supervisor and say she would not be coming in to work.  After she did, Ponce began to attack her.

Rida had difficulty remembering the details of the attack.  She testified that "[i]t was like a dream." RP (Jan. 29, 2001) at 614.  She recalled waking up with broken front teeth and Ponce wiping blood from her face.  She also recalled realizing that her pants had been removed, and remembered Ponce lying on top of her, moving like he was having sexual intercourse.  She also recalled sitting on the bed next to Ponce while he asked her questions about Morales.  When he did not like an answer that she gave, he punched her repeatedly in the face.  Ponce also asked Rida whether she wanted to "die or live handicapped." RP (Jan. 29, 2001) at 611.  She begged him to let her see their son grow up, and he let her go.

Rida drove to Morales' workplace and told him about the attack.  He flagged down a police officer, who drove her to the hospital.  She had a nasal fracture, a cracked molar, broken front teeth, and bruising and swelling to the face. [Deleted, see Dkt. No. 17, Ex. 8.]  From Ponce's home, police recovered a letter in which he threatened to harm Rida and her boyfriend.

The State charged Ponce with one count of first degree rape-domestic violence while armed with a deadly weapon; one count of first degree kidnapping-domestic violence while armed with a deadly weapon; one count of second degree assault-domestic violence while armed with a deadly weapon; and one count of felony harassment while armed with a deadly weapon.

Rida testified at trial.  Before she could leave the witness stand, Ponce stormed forward and assaulted her in front of the jury.  Trial was recessed

immediately.  The next day, defense counsel moved to withdraw.  The court denied the motion.  The court and the parties then agreed that the judge would read an instruction to the jury and would then voir dire each juror individually regarding the effect of the assault.  The court instructed the jury as follows:

> The Defendant, Mr. Ponce, is on trial for several charges, and you, as jurors, are officers of the court and you have a duty to determine which facts in this case have been proven from the evidence produced here in court.

> Throughout your deliberations you must not permit sympathy nor prejudice to influence your verdict.  The behavior of the Defendant in court yesterday is not evidence.  You must not consider the Defendant's behavior in performing your duties as jurors.

> You may have experienced an emotional reaction to this incident.  We are calling you out here now . . . to determine whether you can still do your duty as jurors.  The question for you is not whether you had an emotional reaction to yesterday's events, but the question is whether you will be able to continue to still do your duty as jurors, whether you will be able to consider each count separately, and whether you will be able to evaluate the evidence you have heard as instructed by the Court.

> The question is whether you can still fully, fairly, and carefully consider the evidence in this case. . . .

> . . . .

> Now, that's the general question, and here will be the individual questions I'll put to each one of you as we bring you out.  One, can you follow this instruction, and, two, whether or not you have followed the Court's prior instructions not to discuss this case or let anyone discuss it with you or in your presence.

> Let me give you a third instruction with regard to this instruction which I just read twice to you, do not . . . discuss it among yourselves.  It is for you individually to think about in the quiet of your own hearts, and to make that decision as whether - how you answer it.

> So, don't discuss it with your fellow jurors.  It is an individual decision you will individually have to make.  All right?

RP (Jan. 30, 2001) at 730-32.

REPORT AND RECOMMENDATION
PAGE - 3

The next day, the court questioned the jurors individually.  The first juror answered "yes" to both questions.  The second juror said he couldn't deliberate fairly: "Well, I've thought about this.  I was thinking about it last night, and, in all honesty, I don't think I can."  RP (Jan. 30, 2001) at 737.  He was excused by the court.  The following exchange occurred with a different juror:

> COURT:    The question is, can you still fully, fairly and
>           carefully consider the evidence in this case?
>
> JUROR:    Well, I will try, but I don't think I can get that vision
>           out of my head.
>
> COURT:    All right.  I instructed you that you may well have –
>           everybody in here may well have had an emotional
>           reaction or response, certainly, to yesterday's events.
>           The question is, can you put that aside and can you
>           fully, fairly and carefully consider the evidence in
>           this case and the charges in this case?
>
> JUROR:    I think so.
>
> COURT:    All right.  And have you followed the other Court's
>           instruction not to discuss the case or let anyone
>           discuss it with you or in your presence?
>
> JUROR:    I have.

RP (Jan. 30, 2001) at 742-43.

The defense moved to excuse this juror.  The court denied the motion, stating, "I'm not going to excuse her.  I think that – I think it was a thoughtful response and – and I believe she will work hard to honor that answer of yes.  So, I'm going to keep her."  RP (Jan. 30, 2001) at 750.

The jury convicted Ponce on all counts.

(Dkt. No. 17 Ex. 2 at 2-5.)

On March 16, 2001, petitioner was sentenced in King County Superior Court.  (*Id.*, Ex. 1.)  Petitioner was sentenced to 184 months on the rape charge, including a 24 month deadly weapon enhancement, and to 92 months on the kidnapping charge, including a 24 month deadly weapon enhancement.  (*Id.*, Ex. 1 at 3.)  The sentencing court ruled that those two terms should be served

REPORT AND RECOMMENDATION
PAGE - 4

consecutively.  (Dkt. No. 17, Ex. 1 at 3.)  Petitioner was also sentenced to 41 months on the assault charge, including a 12 month deadly weapon enhancement, and to 18 months on the felony harassment charge, including a 6 month deadly weapon enhancement.  (*Id.*)  The sentencing court ordered that those two sentences be served concurrently to each other and to the sentences imposed on the other counts.  (*Id.*)  Thus, the total term of imprisonment imposed was 276 months.  (*Id.*)

Following his sentencing, petitioner appealed his convictions and sentence to the Washington Court of Appeals, Division I.  (*See id.*, Ex. 3.)  On September 16, 2002, the Court of Appeals issued an unpublished opinion affirming petitioner's convictions and sentence.  (*Id.*, Ex. 2.)  Petitioner moved for reconsideration of the Court of Appeals' decision.  (*Id.*, Ex. 7.)  The Court of Appeals granted the motion for reconsideration in part, and ordered that the opinion be changed to delete a single sentence in the fact portion of its opinion which read "She also had injuries consistent with vaginal penetration."  (*See id.*, Ex. 8.)

Petitioner next filed a petition for review in the Washington Supreme Court.  (*Id.*, Ex. 9.)  Petitioner's petition for review was denied without comment on July 8, 2003.  (*Id.*, Ex. 10.)  On July 18, 2003, the Court of Appeals issued its mandate terminating direct review.  (*Id.*, Ex. 11.)

On December 29, 2003, petitioner filed a personal restraint petition in the Washington Court of Appeals.  (*Id.*, Ex. 12.)  The Court of Appeals issued an order dismissing that petition on July 30, 2004.  (*Id.*, Ex. 15.)  Petitioner filed a motion for reconsideration in the Court of Appeals which was transferred to the Supreme Court and considered as a motion for discretionary review.  (*See id.*, Exs. 16 and 17.)  The Supreme Court Commissioner issued a ruling denying review on January 13, 2006, and the Court of Appeals issued a certificate of finality in petitioner's personal restraint proceedings on April 25, 2006.  (*Id.*, Exs. 18 and 19.)

Petitioner now seeks federal habeas review of his convictions.

<u>GROUNDS FOR RELIEF</u>

Petitioner presents the following grounds for relief in his federal habeas petition:

(1)    Kidnapping, assault, and rape had the same criminal purpose, intent; therefore the charges should be run concurrently.

(2)    Right to a fair trial was violated when the Court failed to give a unanimity instruction regarding two "distinct assaults."

(3)    Right to a fair trial was violated when the Court erroneously denied Ponce's motion to remove a juror who showed actual bias.

(4)    Ponce's constitutional right to a speedy trial was violated.

(5)    1st degree rape, 1st degree kidnapping, 2nd degree assault were not merge[d] as one crime. Due to this multiple convictions and sentences, Ponce is being violated of the double jeopardy clause.

(6)    Ponce's sentence on the weapon enhancement violates the double jeopardy clause.

(7)    Ponce's consecutive sentences of rape and kidnapping violate the double jeopardy clause.

(*See* Dkt. No. 4.)

<u>DISCUSSION</u>

Respondent concedes in her answer that petitioner has properly exhausted his third, fourth, fifth, sixth, and seventh grounds for federal habeas relief by presenting those claims to the Washington Supreme Court for review. Respondent argues, however, that petitioner failed to properly exhaust his state court remedies with respect to his first and second grounds for relief. As to petitioner's exhausted claims, respondent argues that petitioner is not entitled to relief because the state courts' adjudication of the claims was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Petitioner, in his reply brief in support of his petition, concedes that his first and second

grounds for relief were not exhausted as federal claims, and he asks that the Court proceed to disposition of his remaining claims. As the parties agree that petitioner's first two grounds for relief have not been properly exhausted, this Court will proceed to disposition of the five claims which the parties agree have been exhausted.

Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was *contrary to*, or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (emphasis added).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

In addition, if a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

REPORT AND RECOMMENDATION
PAGE - 7

Ground Three: Juror Bias

Petitioner asserts in his third ground for federal habeas relief that his right to a fair trial was violated when the trial court denied his motion to remove a juror who showed actual bias. This claim arises out of petitioner's assault of the victim, Rida Ponce, in front of the jury. After this incident in open court, the trial judge, together with counsel for the parties, devised a method for determining the potential prejudice to the jurors. They developed appropriate questions to be asked of the jurors, and each juror was evaluated independently. After questioning each juror, and evaluating their responses, the trial judge made determinations as to whether individuals jurors should be excused. Though petitioner's counsel moved to have the juror in question in these proceedings excused, the trial court concluded that the juror could be fair and denied counsel's motion.

Respondent argues in her answer to the petition that petitioner's claim of juror bias must fail because it is not based upon clearly established federal law. Respondent asserts that the United States Supreme Court has never held that a defendant may engage in misconduct before the jury, and then allege a denial of the right to an impartial jury as a result of that misconduct. Respondent argues, in the alternative, that even assuming the claim is based upon clearly established federal law, petitioner is not entitled to relief because the state court decision constituted a reasonable application of such law.

Petitioner does not cite to any United States Supreme Court case which holds that a defendant in a criminal proceeding is entitled to relief under the Sixth Amendment when his own misconduct has caused the alleged juror bias, and this Court is aware of none. It thus appears that respondent is correct that there is no clearly established law on the precise issue presented by the facts of this case. There is, however, ample United States Supreme Court case law on the issue of

REPORT AND RECOMMENDATION
PAGE - 8

juror partiality in light of which this Court may evaluate the reasonableness of the state courts' resolution of petitioner's juror bias claim. And, the state court's resolution of petitioner's juror bias claim is entirely consistent with that body of law.

It is well established that a criminal defendant has a right to a trial before "a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 721-22 (1961). Where allegations of juror impartiality are made, the remedy is to provide "a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215 (1982). The Supreme Court, in *Smith*, explained that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Id*. at 217. Rather, "[d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id*.

The burden is on the defendant to establish that a juror lacks impartiality. *See Wainwright v. Witt*, 469 U.S. 412, 423 (1985). In evaluating a claim of juror impartiality, deference must be paid to a state trial judge's determination of bias. *See Wainwright*, 469 U.S. at 426. As the Court noted in *Wainwright*, a finding on whether a juror is biased "is based upon determinations of credibility that are peculiarly within a trial judge's province." *Id*. at 428. Such determinations regarding juror impartiality constitute "factual issues" which are subject to the presumption of correctness set forth in § 2254(e)(1). *See Wainwright*, 469 U.S. at 429.

The Washington Court of Appeals, in addressing this issue on direct appeal, noted a defendant's right, under the Sixth Amendment and the Washington Constitution, to a fair and impartial jury. The Court of Appeals also explained that

The denial of a challenge for cause is within the trial court's discretion, and we

1
2
3

> review such a denial for a manifest abuse of discretion.  We defer to the judgement
> of the trial judge regarding whether a particular juror is able to be fair and impartial
> because the trial judge is in the best position to evaluate the fairness of a juror by the
> juror's character, mental habits, demeanor, under questions and all other data which
> may be disclosed by examination.

4

(Dkt. No. 17, Ex. 2 at 8 (internal citations and quotations omitted).)

5
6
7
8
9
10

      The Court of Appeals acknowledged that the juror who is the subject of petitioner's bias claim, under questioning of the trial court, had initially equivocated as to whether she could fairly consider the evidence.  The Court noted, however, that after further questioning by the trial court as to whether she could put aside her emotional reaction to the incident and "fully, fairly and carefully consider the evidence," the juror responded "I think so." (*Id.*, Ex. 2 at 9-10.)

11

      The Court of Appeals concluded its discussion of this issue as follows:

12
13
14
15
16

>     The purpose of deference to the trial court in these determinations would not
> be served if appellate courts seized upon every equivocal statement as evidence of
> bias.  The trial judge evaluated the juror's demeanor and manner and determined she
> could be fair, and we will not intrude upon that determination.  Additionally, Ponce
> created the potential prejudice by his own conduct, and should not benefit from his
> attack on the complaining witness in open court.  To hold otherwise would create an
> incentive for violent conduct anytime a defendant fears his case is not going well.
> The trial court did not abuse its discretion in denying the challenge for cause.

17

(*Id.*, Ex. 2 at 10.)

18
19
20
21
22
23

      The state court's adjudication of petitioner's juror bias claim was consistent with applicable federal law on the issue of juror partiality.  Petitioner was afforded the requisite opportunity to establish the bias of individual jurors.  The trial court's determination that the juror could be fair, is entitled to a presumption of correctness in these proceedings.  Petitioner fails to overcome the presumption.  Accordingly, petitioner's juror bias claim must fail.

24
25
26

REPORT AND RECOMMENDATION
PAGE - 10

1

<u>Ground Four:  Speedy Trial</u>

2

Petitioner asserts in his fourth ground for federal habeas relief that his right to a speedy trial

3

was violated when his trial was delayed for three months.  Petitioner argues that he objected to each

4

of the three continuances granted by the trial judge, including one continuance which was requested

5

by his own attorney, and that he was prejudiced by the delays.  Petitioner contends that after the

6

first continuance, the state added two more charges which had the effect of increasing his sentence

7

when he was subsequently found guilty on those additional charges.

8

9

The Sixth Amendment guarantees an accused the right to a "speedy and public trial."  U.S.

10

Const Amend. VI.  This right is imposed on the states by the Due Process Clause of the Fourteenth

11

Amendment.  *Klopferer v. North Carolina*, 386 U.S. 213 (1967).  The United States Supreme

12

Court has long held that "[t]he right of a speedy trial is necessarily relative.  It is consistent with

13

delays and depends upon circumstances."  *Beavers v. Haubert*, 198 U.S. 77, 87 (1905).  Thus,

14

"inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular

15

context of the case."  *Barker v. Wingo*, 407 U.S. 514, 522 (1972).

16

17

In *Barker*, the Supreme Court identified four factors that should be considered when

18

evaluating speedy trial claims.  Those four factors are: (1) the length of the delay; (2) the reason for

19

the delay; (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the

20

defendant. These four factors are related and must be considered together with other circumstances

21

relevant to a particular case.  *Barker*, 407 U.S. at 533.

22

The record reflects that petitioner was originally charged in King County Superior Court

23

with kidnaping in the first degree and rape in the first degree.  (Dkt. No. 17, Ex. 20 at 4.)  Petitioner

24

was arraigned on these charges on September 5, 2000, and trial was set for October 30, 2000.  (*Id.*)

25

On October 13, 2000, the State moved to hold the case over to the original expiration date of

26

REPORT AND RECOMMENDATION
PAGE - 11

November 6, 2000, because the parties were waiting for DNA analysis information. (Dkt. No. 17, Ex. 20 at 4.)  On October 30, 2000, the State filed an amended information adding second degree assault and felony harassment charges to the original kidnaping and rape charges. (*Id.*, Ex. 13, Appendix B.)  On November 3, 2000, petitioner's counsel made a motion, over petitioner's objection, for a thirty day extension to allow further investigation of inculpatory evidence. (*Id.*, Ex. 20 at 5.)  The motion was granted and the trial date was extended to December 4, 2000. (*Id.*)  The trial court thereafter granted a series of extensions, at the request of the prosecutor, which were apparently necessitated by scheduling conflicts attributable to the prosecutor. (*See id.*, Ex. 20 at 4.)

On January 8, 2001, petitioner's counsel moved to dismiss the action on speedy trial grounds. (*Id.*)  Petitioner's counsel argued that the delays caused by the unavailability of the prosecutor did not justify the extensions granted after December 4. (*Id.*, Ex. 20 at 5.)  Petitioner's motion to dismiss was denied after the trial court found that the record was insufficient to establish that the extensions beyond the December 4 were neither unforeseeable nor unavoidable. (Dkt. No. 17, Ex. 20 at 8.)  Petitioner's trial began on January 8, 2001.[1]  (*Id.*)

The Washington Court of Appeals, in addressing petitioner's speedy trial claim on direct appeal, addressed the claim on state law grounds, and concluded that the trial court did not abuse its discretion in granting extensions after December 4, 2000.  This Court's review of petitioner's speedy trial claim, in light of the factors set forth in *Barker*, satisfies this Court that petitioner suffered no violation of his federal constitutional rights when the trial court granted extensions

---

[1] Petitioner's trial began on January 8, 2001, with a motion to exclude witnesses, and pre-trial motions were heard during the course of that week. (*See* Dkt. No. 17, Ex. 21 at 1.)  Jury selection began on January 18, 2006. (*See id.*, Ex. 21 at 73.)

REPORT AND RECOMMENDATION
PAGE - 12

which continued petitioner's trial date approximately two months past the original speedy trial

expiration date.

The first *Barker* factor is the length of the delay.  In this case, the delay complained of was

not lengthy.  Petitioner's original expiration date was November 6, 2000, and trial began on January

8, 2001.  Thus, the total delay was approximately 63 days.  Approximately 30 of those days were

attributable to petitioner whose counsel requested additional time to interview the State's expert

witness and to prepare to meet the DNA evidence produced by the State.  As the delay in

petitioner's case was not excessive, this factor does not weigh in petitioner's favor.

The second *Barker* factor is the reason for the delay.  There is no evidence in the record to

suggest that the State's requested continuances constituted a deliberate attempt to delay the trial in

order to hamper the defense.  Rather, the record indicates that the delay was largely attributable to

the busy trial calendar of the prosecutor's assigned to try the case.  While this factor does not weigh

heavily in favor of petitioner, it does weigh slightly in his favor because "the ultimate responsibility

for such circumstances must rest with the government."  *See Barker*, 407 U.S. at 531.

The third *Barker* factor is whether and how the defendant asserts his right.  In this case, the

record indicates that petitioner objected to each of the continuances, even the one requested by his

own counsel.  Because it appears that petitioner repeatedly and consistently asserted his right to a

speedy trial, this factor weighs in petitioner's favor.

The fourth *Barker* factor is whether there was any prejudice attributable to the delay.  The

only prejudice cited by petitioner in his briefing in these proceedings is that the State added two

charges which ultimately had the effect of increasing his sentence.  Petitioner contends that if he had

been afforded his right to a speedy trial, he would have been sentenced on only two charges and not

four.  However, the record reflects that the additional charges were filed on October 30, 2000,

REPORT AND RECOMMENDATION
PAGE - 13

before the expiration of the original speedy trial deadline.  Moreover, there is nothing in the record to suggest that this late amendment of the charges necessitated the subsequent continuances.

While the second and third factor weigh slightly in petitioner's favor, the first and fourth factors do not.  The delay in this case was not excessive and petitioner suffered no apparent prejudice as a result of the delay.  The fact that the delay was attributable, primarily, to the prosecutor's workload, and that petitioner made known his objections to the requested continuances, do not tip the balance in his favor.  Accordingly, this Court recommends that petitioner's federal habeas petition be denied with respect to his fourth ground for relief.

<u>Claims Five, Six, and Seven: Double Jeopardy</u>

Petitioner asserts in each of his final three grounds for relief that his convictions and sentence violate double jeopardy principles.  In his fifth ground for relief, petitioner asserts that his rape and assault charges should have merged with his kidnaping charge.  Petitioner contends that the trial court's refusal to merge these offenses resulted in multiple convictions and sentences for the same offense.

In his sixth ground for relief, petitioner asserts that the weapon enhancement imposed with respect to the rape charge violated the Double Jeopardy Clause.  Petitioner contends that because the use of the weapon enhanced the degree of the offense with which he was charged, the consecutive 24 month sentence he received for the weapon enhancement constituted a second punishment for the same offense.

Finally, in his seventh ground for relief, petitioner asserts that the consecutive sentences imposed with respect to his rape and kidnaping charges violate the Double Jeopardy Clause because the charges constitute the same criminal conduct.  Petitioner further contends in his seventh ground for relief that his consecutive sentences violate the rule announced in *Blakely v. Washington*, 542

REPORT AND RECOMMENDATION
PAGE - 14

1    U.S. 296 (2004).

2        The Fifth Amendment to the United States Constitution guarantees that no person shall "be

3    subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. Amend V.

4    The Double Jeopardy Clause protects against three distinct abuses:  a second prosecution for the

5    same offense after conviction, a second prosecution for the same offense after acquittal, and

6    multiple punishments for the same offense.  *Schiro v. Farley*, 510 U.S. 222, 229 (1994), *citing*

7    *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  Where cumulative sentences are imposed in

8    a single criminal trial, the role of the  Double Jeopardy Clause "is limited to assuring that the court

9    does not exceed its legislative authorization by imposing multiple punishments for the same

10   offense."  *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

11       The test for determining whether separate punishments may be imposed for multiple

12   offenses arising in the course of a single act or transaction was set forth in *Blockburger v. United*

13   *States*, 284 U.S. 299 (1932):

14
15       The applicable rule is that where the same act or transaction constitutes a violation
         of two distinct statutory provisions, the test to be applied to determine whether
16       there are two offenses or only one, is whether each provision requires proof of a
         fact which the other does not. . . .
17

18   *Id.* at 304.

19   **1.    *Ground Five:  Merger***

20       Petitioner argues in his fifth ground for relief that his rape and assault charges should have

21   merged with his kidnaping charge because rape and assault are necessary elements that had to be

22   proven in order to convict him of first degree kidnaping.  Petitioner maintains that the refusal to

23   merge these offenses constituted a violation of his rights under the Double Jeopardy Clause.

24       Petitioner presented this claim to the state courts in his personal restraint petition.

25

26

REPORT AND RECOMMENDATION
PAGE - 15

However, the state courts, in rejecting this claim, relied solely on state merger doctrine and made no

mention of double jeopardy principles.  The Washington Supreme Court explained its conclusion

with respect to petitioner's merger claims as follows:

> The doctrine of "merger" applies where the legislature has clearly indicated that in
> order to prove a particular degree of a crime, the State must prove not only that the
> defendant committed that crime, but that the crime was accompanied by an act
> defined as a crime elsewhere in the criminal code.  *State v. Louis*, 155 Wn.2d 563,
> 571, 120 P.3d 936 (2005).  But merger does not apply here.  The State alleged that
> Mr. Ponce committed the kidnapping with "intent" to facilitate a rape and to inflict
> bodily injury.  The State thus was not required to prove a completed rape or a
> completed assault in order to prove the kidnapping.  *See In re Pers. Restraint of
> Fletcher*, 113 Wn.2d 52-53, 776 P.2d 114 (1989) (under statute, defendant need not
> actually carry out another crime in order to commit first degree kidnapping).

(*Id.*, Ex. 18 at 1-2.)

The Supreme Court has repeatedly held that state courts are the ultimate expositors of state

law.  *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  A federal habeas court must therefore

defer to the state court's interpretation of state law.  *Id.*  The state courts determined that

petitioner's convictions did not merge for purposes of state sentencing law.  That decision is

entitled to deference by this Court.  To the extent petitioner contends that the failure to merge these

offenses resulted in multiple punishments for the same offense in violation of the Double Jeopardy

Clause his claim must also fail as petitioner has not demonstrated that the punishment imposed

exceeded that which was intended by the Washington legislature.  For the foregoing reasons,

petitioner's federal habeas petitioner should be denied with respect to his fifth ground for relief.

**2.       *Ground Six:  Deadly Weapon Enhancement***

Petitioner asserts in his sixth ground for relief that the imposition of the weapon

enhancement with respect to his rape conviction violated his rights under the Double Jeopardy

Clause.  Specifically, petitioner contends that because the weapon was used to enhance the degree

REPORT AND RECOMMENDATION
PAGE - 16

of the offense with which he was charged, the weapons enhancement, which increased his sentence by 24 months, constituted a second enhancement.

The Washington Court of Appeals and the Washington Supreme Court rejected this claim in petitioner's personal restraint proceedings on the grounds that the legislature clearly intended the result complained of by petitioner.  (*See* Dkt. No. 17, Ex. 15 at 3-4 and Ex. 18 at 2.)

The decision of the state courts is entirely consistent with federal law.  A review of the applicable state statute reveals that the Washington legislature clearly intended that an individual who was found to have committed certain crimes while armed with a deadly weapon, would receive additional time.  RCW 9.94A.310, recodified as § 9.94A.510 by Laws 2001, ch. 10. While the legislature excluded a small number of crimes from application of the deadly weapon enhancement, none of petitioner's crimes qualified for exclusion.  *Id.*  Thus, as the state courts concluded, because the punishment petitioner received did not exceed that which was intended by the legislature, there can be no double jeopardy violation.

As the decisions of the state courts with respect to this claim were neither contrary to, nor did they constitute an unreasonable application of, federal law as determined by the United States Supreme Court, petitioner's federal habeas petition should be denied with respect to his sixth ground for relief.

**3.**     ***Ground Seven:  Consecutive Sentences***

Petitioner asserts in his seventh ground for federal habeas relief that the consecutive sentences imposed with respect to his rape and kidnaping convictions violate the Double Jeopardy Clause.  Petitioner argues that the verdict rendered by the jury reflects a determination that petitioner kidnaped his victim in order to rape and assault her, that the crimes were a part of the same scheme and plan, and, thus, that the offenses therefore constitute the same criminal conduct.

REPORT AND RECOMMENDATION
PAGE - 17

1    Accordingly, he argues, the imposition of consecutive sentences violates the Double Jeopardy

2    Clause.  Petitioner further argues that his sentence violates the rule announced in *Blakely v.*

3    *Washington*, 542 U.S. 296 (2004), because the sentence differs from the jury's findings.

4         The state courts rejected petitioner's double jeopardy claim in his personal restraint

5    proceedings, concluding that each crime required proof of an element that the other did not and,

6    thus, that the crimes were not  the same.  (*See* Dkt. No. 17, Ex. 18 at 2 and Ex. 15 at 3.)  The

7    Court of Appeals, in rendering its decision with respect to this claim, noted not only that the

8    offenses failed to satisfy the "same evidence" test, but also that petitioner failed to demonstrate

9    "the existence of contrary legislative intent or any other evidence to overcome the strong

10   presumption that the legislature intended to punish separate offenses."  (*Id.*, Ex. 15 at 3.)

11

12        The test employed by the state courts to resolve petitioner's claim that his consecutive

13   sentences violated double jeopardy principles was consistent with the test set forth in *Blockburger*.

14   Moreover, as noted by the Court of Appeals, petitioner makes no showing that imposition of

15   consecutive sentences was contrary to legislative intent.  The state courts' decisions with respect to

16   plaintiff's double jeopardy claim were neither contrary to, nor did they constitute an unreasonable

17   application of, federal law as determined by the United States Supreme Court.  Accordingly,

18   petitioner's federal habeas petition should be denied with respect to the double jeopardy claim set

19   forth in his seventh ground for relief.

20

21         Finally, with respect to petitioner's claim that he is entitled to relief under *Blakely*, the

22   Washington Supreme Court rejected that claim on the grounds that "the decision does not apply to

23   consecutive sentences for different crimes" nor does it apply to petitioner's previously final

24   judgment.  (*Id.*, Ex. 18 at 2.)  Though the United States Supreme Court recently granted certiorari

25   in *Burton v. Waddington*, No. 03-35095, 2005 U.S. App. LEXIS 15497 (9th Cir. July 28, 2005),

26

REPORT AND RECOMMENDATION
PAGE - 18

*cert. granted*, 126 S. Ct. 2352 (2006), and will address the issue of *Blakely* retroactivity, there is no current United States Supreme Court precedent holding that *Blakely* may be applied retroactively to cases such as petitioner's which became final before *Blakely* was decided. Accordingly, petitioner's federal habeas petition should be denied with respect to this portion of petitioner's seventh ground for relief as well.

<u>CONCLUSION</u>

For the reasons set forth above, this Court recommends that petitioner's federal habeas petition be denied, and that this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 7th day of September, 2006.

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 19